UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JACQUELINE AVERY,

    Plaintiff,

v.                                                                              Case No. 20-11810

SEDGWICK CLAIMS MANAGEMENT
SERVICES, INC. and EXTENDED DISABILITY
BENEFIT OF THE CHRYSLER GROUP LLC
GROUP INSURANCE PROGRAM

    Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION
TO REJECT PROCEDURAL CHALLENGE**

Plaintiff Jacqueline Avery, an employee of Chrysler Group, LLC ("Chrysler"), brings this action under 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA) to recover benefits allegedly owed by an employer-provided long-term disability plan ("Defendant Plan[1]") and administered by Defendant Sedgwick Claims Management Services, Inc. ("Sedgwick"). (ECF No. 1.) Currently before the court is Plaintiff's Statement of Procedural Challenge (ECF No. 9) and Defendants' response, styled as a "Motion to Strike Statement of Procedural Challenge." (ECF No, 12.) The court construes the motion as one to review and reject,

---

[1]     The court notes that there is evidently some confusion between the parties about which Chrysler long-term disability plan is the proper Defendant in the present dispute. (*See* ECF No. 14, PageID.177 n.1.) The court expects counsel for the respective parties to confer and reach a resolution on this point as the answer should be easily obtainable.

rather than to "strike" the filed paper from the record. Having reviewed the briefs, the court concludes that a hearing is not necessary. See E.D. Mich. LR 7.1(e)(2).  For the reasons stated below, the court agrees that Plaintiff has not presented a proper procedural challenge and will therefore REJECT the Statement of Procedural Challenge, and will limit review to the administrative record.

## I. BACKGROUND

Plaintiff worked as a financial specialist at Chrysler in Michigan until July 2011. She allegedly became disabled "as a result of complex regional pain syndrome, venous reflux disease, and neuropathy, complicated by other conditions" in her lower extremities. (ECF No. 1, PageID.3; ECF No. 12, PageID.96.) After receiving short-term disability, Plaintiff was approved for long-term disability benefits in August 2012 by Defendant Sedgwick. (ECF No. 1, PageID.4.) As required by the terms of Defendant Plan, Plaintiff applied for Social Security Disability benefits in August 2012 and was approved based on her application and medical information without the need for a hearing. (*Id*, PageID.5.) Plaintiff's benefits under the plan were then offset by her Social Security payments. (*Id*.)

Sedgwick continued to authorize extensions of Plaintiff's benefits until July 2014 when it notified Plaintiff that she would be required to attend an independent medical examination with Dr. Joel Shavell, who is board certified in internal medicine and rheumatology. (*Id*, PageID.6.) On July 21, 2014, Sedgwick sent a letter to Plaintiff stating that the "recent IME examination" found that she was "[a]ble to work." (ECF No. 12-1, PageID.134.) The letter told Plaintiff to "report to your plant medical department for a determination of your ability to return to work" and advised that Plaintiff's benefits

"may be suspended effective July 21, 2014 pending the outcome of the ability to work examination."

At the onsite examination Chrysler's physician found that Plaintiff was able to return to work (*Id.*, PageID.122), and on August 20, 2014, Sedgwick sent Plaintiff a longer letter stating that "[b]ased upon the results of the your recent IME examination, in which you were found able to work, the eligibility requirement is no longer satisfied." (*Id.*, PageID.123.) The letter also said that Plaintiff was to report to the Chrysler Human Resources Department "for a determination of your ability to return to work" and laid out the process and deadlines for filing an appeal. (*Id.*)

Before even receiving this second notification, however, in late July 2014, Plaintiff filed a detailed letter "appeal[ing] [the] recent return to work decision communicated to me on July 22, 2014," by "challeng[ing] several statements" in Dr. Shavell's IME report, a copy of which Plaintiff had obtained "during [her] visit to Chrysler." (*Id.*, PageID.125-27.)

After an independent record review conducted by neurologist David Hownig, Sedgwick informed Plaintiff on September 12, 2014 that her appeal was being denied. (*Id.*, PageID.110.) Plaintiff hired an attorney and, on May 18, 2015, submitted another letter to Sedgwick requesting that her benefits be "immediately [and] retroactively" reinstated. She attached a letter from Dr. Robert Brengel, Plaintiff's treating physician, indicating Plaintiff was still disabled. (*Id.*, PageID.106.) Sedgwick then conducted another review of Plaintiff's file and obtained a new independent record review by a neurologist. (*Id.*, PageID.97-98.) In September 2015, Sedgwick again found that Plaintiff was not disabled. (*Id.*) The new letter indicated that Plaintiff had forty-five days to

3

appeal the updated determination. (*Id.*) She did not file another appeal. Instead, Plaintiff commenced the present ERISA suit in July 2020. (*See* ECF No. 1)

## II. STANDARD

The general rule is that a district court should base its review of an ERISA-based claim of an alleged denial of benefits solely upon the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). The district court may consider other evidence "only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Id.* "If a court finds that due process was not denied, however, then it is appropriate for the district court to deny further discovery into substantive areas, or else a plaintiff could circumvent the directive of *Wilkins* merely by pleading a due process problem." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 431 (6th Cir. 2006); *Putney v. Medical Mutual of Ohio*, 111 F. App'x 803, 807 (6th Cir. 2004).

## III. DISCUSSION

Plaintiff has filed a "Statement of Procedural Challenge" highlighting ten alleged procedural errors which she contends prevented her from being afforded a "full and fair review of her claim." (ECF No. 9, PageID.52.)

1. Sedgwick hired a doctor who is not a neurologist, Dr. Joel Shavell, to evaluate Ms. Avery's neurological disorders, and Sedgwick did not send the doctor a complete set of medical records to review (Complaint, ¶¶ 29-33, ECF No. 1, PageID.7);

2. Sedgwick discontinued Ms. Avery's benefits after initially approving them for several years solely on the basis of Dr. Shavell's flawed evaluation (Complaint, ¶ 35, ECF No. 1, PageID.7);

3. In issuing its decision, Sedgwick failed to apply the correct definition of disability under the terms of the Chrysler Plan (Complaint, ¶¶ 36-37, ECF No. 1, PageID.7-8);

4. Sedgwick did not perform an assessment of Ms. Avery's employability that was consistent with the terms of the Chrysler Plan (Complaint, ¶ 38, ECF No. 1, PageID.8);

5. Sedwick's adverse benefit determination letter to Ms. Avery failed to comply with ERISA regulations in that it did not explain Ms. Avery's appeal rights, did not notify Ms. Avery that she had a right to obtain all of the information relevant to her claim, and did not explain what information was needed for Ms. Avery to perfect her claim (Complaint, ¶ 39, ECF No. 1, PageID.8);

6. Contrary to acceptable procedure for ERISA benefit claims, Sedgwick's adverse benefit determination letter failed to address in any way the fact that Ms. Avery has been approved for Social Security Disability benefits, despite the fact that Sedgwick had required Ms. Avery to apply for those benefits and Sedgwick claimed an overpayment and offset based on Ms. Avery's receipt of Social Security Disability benefits (Complaint, ¶ 40, ECF No. 1, PageID.9);

7. Sedgwick also totally ignored favorable evidence from Ms. Avery's treating physicians without any explanation, and Sedgwick heavily relied on its own consultant who was not board-certified in the relevant specialty (Complaint, ¶ 40, ECF No. 1, PageID.9);

8. Sedgwick ignored the favorable findings of two doctors who performed earlier IMEs (Complaint, ¶ 46, ECF No. 1, PageID.10);

9. Sedgwick denied an appeal by Ms. Avery and issued a final adverse benefit determination that again failed to use the correct definition of disability from the plan, failed to address the fact that Ms. Avery was getting Social Security Disability benefits, failed to address her treating physician opinions, and relied entirely on the opinion of a hired consultant (Complaint, ¶ 48, ECF No. 1, PageID.10);

10. Sedgwick did not follow the claim procedures of the Chrysler Plan, failing to notify Ms. Avery that she might have a further avenue for appeal, and instead notifying her that: "The decision is the Claim Administrator's final decision. You have the right to bring a civil action under ERISA 502(a)." (Complaint, ¶¶ 49-51, ECF No. 1, PageID.10-11);

(ECF No. 9, PageID.51-52.) Plaintiff's original filing argued that these alleged procedural errors entitle her to obtain discovery from outside the administrative record under *Wilkins*. (*Id.*) Defendants filed a "Motion to Strike Plaintiff's Statement of Procedural Challenge" providing a detailed response to all ten deficiencies alleged by Plaintiff. (*See* ECF No. 12.) In Plaintiff's most recent briefing, she now concedes that:

> Defendants are correct that a few of the points raised in Plaintiff's Statement of Procedural Challenge typically get resolved without expanding the administrative record. An argument that the administrator 'ignored favorable evidence submitted by [her] treating physicians, selectively reviewed the evidence it did consider from the treating physicians, failed to conduct its own physical examination, and heavily relied on non-treating physicians' can be factors weighing in favor of finding the administrator's decision to be arbitrary and capricious.

(ECF No. 14, PageID.180 (quoting *Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 547 (6th Cir. 2015)).) Plaintiff did not specify which of the ten objections raised in the procedural challenge she is abandoning, so the court will assume that Plaintiff has conceded all challenges not directly argued in her briefing.

Plaintiff's latest briefing continues to argue that the following procedural errors occurred. First, Plaintiff contends that Defendants failed to provide proper notification of the initial denial of benefits and that the timing of the notification also meant the denial of a reasonable opportunity to appeal. (*Id.*, PageID.175-76.) Second, Plaintiff argues that Defendants failed to properly consider the Social Security Administration's finding that Plaintiff was disabled.[2] (*Id.*, PageID.179-80.)

---

[2] Plaintiff's latest briefing now also argues that "[Plaintiff] should have access to all [of Chrysler's] related corporate and personal records" because the administrative record contains an email from corporate security to Sedgwick indicating that Chrysler had conducted surveillance on Plaintiff. (ECF No. 14, PageID.180.) Plaintiff however fails to articulate what procedural protection was violated by this email being included in the administrative record in the first place. Consequently, Plaintiff has not plausibly

6

## A. Notification

The court first finds that Plaintiff has failed to alleged a plausible procedural violation with regards to EIRSA's notification requirement because the alleged "procedural failures did not prevent [Plaintiff] from gaining information necessary to contest h[er] denial of benefits." See *Putney v. Med. Mut. of Ohio*, 111 F. App'x 803, 807 (6th Cir. 2004). The crux of Plaintiff's argument is that the July 21, 2014 letter sent to Plaintiff constituted a "notification of a benefit determination" that failed to "provide adequate notice in writing . . . , setting forth the specific reasons for such denial, . . . and . . . afford[ing] a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review." 29 U.S.C.A. § 1133; *see also* 29 C.F.R. § 2560.503-1(g) (2014) (setting forth specific information that must be included in a benefits determination letter).

It is undisputed that the July 21 letter did not provide a detailed determination of Defendants' decision to deny Plaintiff further disability benefits and did not include any information on how an appeal could be filed. (*See* ECF No. 12-1, PageID.134.) Defendants factually dispute whether this letter constituted a benefits determination or merely communicated the findings of Dr. Shavell's IME. (ECF No. 12, PageID.72.) And Defendants point to Sedgwick's detailed August 20, 2014 letter—which more closely hewed to the requirements of 29 C.F.R. § 2560.503-1(g)—as the document meant to notify Plaintiff of a final benefits determination. (ECF No. 12-1, PageID.123.)

---

alleged that she has "been substantially denied [any] procedural protections afforded by ERISA." *See Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 431 (6th Cir. 2006).

7

The court need not wade into this factual dispute because the Sixth Circuit found in *Kent v. United of Omaha Life Ins. Co.* that an insurer "*substantially complied* with E.R.I.S.A.'s procedural requirements" when the claimant was provided with two consecutive letters that collectively complied with ERISA's notification requirement. 96 F.3d 803, 807 (6th Cir. 1996) (emphasis added). In *Kent*, the insurer's notification procedures "were technically deficient because the [contents of the] first letter did not meet the requirements of the statute and regulation, and the second letter was untimely (it being issued more than 90 days after the decision to deny the claim)." *Id.* But the court determined that "when viewed in light of the myriad of communications between claimant, her counsel and the insurer, [the letters] were sufficient to meet the purposes of Section 1133 in insuring that the claimant understood the reasons for the denial of the claim as well as her rights to review of the decision." *Id.*

In the present case, Defendants' substantial compliance with the notification requirements is even more readily apparent, because unlike in *Kent*, even if the court assumes that, as Plaintiff alleges, both letters were attempts at notifying Plaintiff of a final benefit determination, Sedgwick's second letter provided a timely correction undisputedly within the ninety-day notification window required by the regulation. Therefore, any alleged "procedural failures" with regards to the notification letters cannot plausibly said to be "substantial" under Sixth Circuit case law because the alleged procedural violations "did not prevent [Plaintiff] from gaining information necessary to contest [her] denial of benefits." *Putney,* 111 F. App'x at 807.

Plaintiff likewise has failed to allege any meaningful procedural defect in the appeals process. While Plaintiff's decision to file an appeal before she had received the

8

more detailed August 20, 2014 denial letter may have caused some confusion, it is undisputed that Sedgwick not only acted on the contents of the initial appeal but also allowed the Defendant another "re-review" of its determination in 2015 once she had retained counsel. (*See* ECF No. 15-2, PageID.216-17.) Sedgwick responded to the July 2014 appeal—raising questions about Dr. Shavell's IME—by engaging a neurologist to conduct an independent record review. (*See* ECF No. 15-2, PageID.227-31.) And, after the appeals deadline listed in its August 20, 2014 letter, Sedgwick voluntarily reexamined the file and had yet another neurologist conduct an independent record review in 2015 when Plaintiff's attorney submitted a new letter from her primary care physician supporting her claim. (*See* ECF No. 12-1, PageID.99-100, 106-07.) Plaintiff does not deny such reviews occurred and has not clearly articulated how these two appeals together did not provide Plaintiff with a meaningful chance of review. Plaintiff cannot complain she was unaware that she had the opportunity to file a second appeal when she actually filed one; therefore, the court finds Plaintiff has not plausibly alleged a significant deficiency in the appeals process.

### B.  Failure to Consider the Social Security Determination

Plaintiff next argues that a procedural flaw in the review of her claim exists because the Defendants failed to properly consider the Social Security Administration's determination that Plaintiff was disabled. While the current version of the ERISA "Claims Procedure" regulation requires that a denial of benefits notification address a contrary Social Security Disability determination, Plaintiff now concedes the version of the regulation in effect during 2014 had no explicit requirement. (ECF No. 14, PageID.178.) *See* 29 C.F.R. § 2560.503-1 (2014). Instead, Plaintiff argues that

9

> the amended regulations [now in effect] merely clarify the existing requirement to provide each claimant with a full and fair review, and the Sixth Circuit has long adhered to the jurisprudential rule that, 'if the plan administrator (1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain why it is taking a position different from the SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the decision was arbitrary or capricious.'

(*Id.*, PageID.178-79 (quoting *Bennett v Kemper National Services*, 514 F.3d 547, 554 (6th Cir. 2008)).) A close reading of *Bennett* however shows that it stands only for the proposition that a defendant's failure to consider an SSA disability determination is a factor that "weighs in favor of finding that [the insurer] failed to engage in a deliberate, principled reasoning process" under the arbitrary and capricious standard of review. *Bennett*, 514 F.3d at 554 (quotation omitted). The *Bennett* decision nowhere indicates that an insurer's failure to consider an SSA determination constitutes a procedural error that necessitates extra discovery. Plaintiff can certainly argue that the failure to consider the SSA disability determination supports a finding that Defendant's determination "cannot withstand scrutiny under the arbitrary or capricious standard of review," but it does not constitute grounds for more discovery. *See id.*

Perhaps anticipating this conclusion, Plaintiff, in the alternative, now argues that further discovery is needed "because Sedgwick not only required Ms. Avery to apply for Social Security, but controlled the entire process through which Ms. Avery obtained her benefits." (*Id.*, PageID.179.) The Defendants, in response, argue that the record shows that "there is no evidence to support Plaintiff's argument that Sedgwick administered Plaintiff's application for SSDI, because it did not." (ECF No. 15, PageID.208.) The court first notes that Plaintiff's new factual allegation was first raised in her responsive briefing and is not contained in the initial complaint. (*See* ECF No. 1, PageID.9 (noting only that

10

"Sedgwick had required Ms. Avery to apply for [the SSDI] benefits").) Plaintiff's new argument includes no citations to any facts in the record. Because Plaintiff has not "provided any facts to support a claim that discovery might lead to such evidence," the court finds that this "mere allegation," is insufficient to establish a plausible procedural defect claim that requires additional discovery. *Putney*, 111 F. App'x at 807.

## IV. CONCLUSION

For the reasons stated above, the court finds that Plaintiff has failed to raise significant procedural defects that justify further discovery. Accordingly,

IT IS ORDERED that "Defendants' Motion to Strike Plaintiff's Statement of Procedural Challenge" (ECF No. 12) is GRANTED and Plaintiff's Statement of Procedural Challenge (ECF No. 9) is REJECTED.  No valid procedural challenge is presented justifying further discovery.


                                        s/Robert H. Cleland
                                        ROBERT H. CLELAND
                                        UNITED STATES DISTRICT JUDGE

Dated:  September 14, 2021
I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 14, 2021, by electronic and/or ordinary mail.
                                        s/Lisa G. Wagner
                                        Case Manager and Deputy Clerk
                                        (810)292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\20-11810.AVERY.MotionToStrikeProceduralChallenge.AAB.RHC.docx